484 So.2d 149 (1986)
STATE of Louisiana In the Interest of Donna Annette GARNER.
No. CR85-350.
Court of Appeal of Louisiana, Third Circuit.
January 13, 1986.
Rehearing Denied February 18, 1986.
*150 William D. Dyess, Many, for defendant-appellant.
Don M. Burkett, Dist. Atty., Many, for plaintiff-appellee.
*151 Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
The Eleventh Judicial District Court of Sabine Parish, sitting in its capacity as the juvenile court, adjudicated Donna Annette Garner a juvenile delinquent after she admitted to the delinquent act of possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966(A)(1). In its judgment of commitment, the court ordered that Donna be placed in the custody of the Louisiana Department of Corrections, Youth Division, which is confinement served at the Louisiana Training Institute (LTI), for a period of time not to exceed her 21st birthday.[1] Donna seeks a reversal of her commitment contending the juvenile court erred: (1) in failing to properly apply the sentencing guidelines set forth in LSA-C.Cr.P. Art. 894.1; (2) in failing to state for the record the considerations taken into account, and the factual basis therefor, in imposing sentence as required by LSA-C. Cr.P. Art. 894.1(C); and (3) in imposing an excessive sentence. For the following reasons, we vacate and set aside the commitment and remand for re-disposition.

FACTS
In April 1984, Donna, who was fifteen years of age, sold four marijuana cigarettes for $5 to an undercover agent in Zwolle. She testified that her older sister, Karen Garner, nineteen years of age, gave her the marijuana cigarettes, but her sister did not tell her from whom she obtained the marijuana.

SENTENCING GUIDELINES
Donna contends the juvenile court failed to apply the sentencing guidelines of C.Cr.P. Art. 894.1 and failed to state the considerations taken into account in its disposition.
The juvenile court is not required to follow C.Cr.P. Art. 894.1 in the disposition of a juvenile, but may apply the general disposition guidelines set forth in C.J.P. Art. 86. State In Interest of Brown, 385 So.2d 382 (La.App. 1st Cir.1980). In the present case, the juvenile court chose to use the specific guidelines of C.Cr.P. Art. 894.1 in its evaluation of the general principles of LSA-C.J.P. Art. 86.
C.J.P. Art. 86 provides in pertinent part:
"A. The court should impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal."
Although C.J.P. Art. 86 does not specify that the record shall contain a particularization of the facts supporting the juvenile commitment, the record must nonetheless provide us with criteria with which to evaluate the disposition in terms of C.J.P. Arts. 83 and 86. State In Interest of George, 430 So.2d 289 (La.App. 3rd Cir.1983). In adult criminal convictions the function of C.Cr.P. Art. 894.1 is to provide the reviewing court with criteria for consideration of whether defendant's sentence has been particularized and whether the sentence is constitutionally excessive. State v. Sepulvado, 367 So.2d 762 (La. 1979). Accordingly, C.Cr.P. Art. 894.1 is not antagonistic to the objectives of C.J.P. Art. 86, and can be utilized as a tool to develop the trial record so that a reviewing court can better evaluate the juvenile *152 court's commitment choice. Therefore, we find it was appropriate, though not required, for the juvenile court to consider Art. 894.1 in the disposition of the juvenile matter before us.
The guidelines in C.Cr.P. Art. 894.1 are more specific than C.J.P. Art. 86 and provide as follows:
"A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."
In its "Written Reasons for Sentence," the court stated: "In arriving at an appropriate disposition of this matter the Court reviewed the sentencing guidelines of Article 894.1 of the Louisiana Code of Criminal Procedure." (Emphasis added.) Therefore, we conclude that when a juvenile court elects to apply the sentencing guidelines set forth in Article 894.1, as in the case at hand, it must comply with those guidelines.
Donna's family history is tragic. According to the predispositional report, Donna lives at the family home with her two illegitimate children, along with her parents and three other family members, in a run-down wooden frame house that is too small for the number of people living in it. No one in the Garner family works. The family survives on $314 Social Security and $384 in food stamps a month. Donna's peers are not a desirable group. While in the ninth grade, she dropped out of school to have her first baby and thereafter never returned to high school, but enrolled in the adult education program at the trade school to obtain her GED. The predispositional report's evaluation summary and recommendation stated:
"EVALUATIVE SUMMARY:

Donna is a rather mature, independent young lady who became a mother this year. She has been known to associate *153 with some inappropriate peers in the past and her continued association with these type peers has resulted in this present offense. She seems to have the intelligence to know that further activity of this kind will only get her into more trouble. She seems to want to avoid any other contact with the law.

RECOMMENDATION:
It is our agency's recommendation that Donna be placed on supervised probation for an indefinite period of time."
Although the learned trial judge gave conscientious reasons for commitment, we find his reasons were directed at Donna's poor living conditions and her undesirable circumstances rather than her particular delinquency and the mitigating circumstances applicable to her. In its written reasons, the court stated:

"This Court has known the father since infancy. He has a juvenile record, of theft and breaking and entering, and served two separate sentences for this. He has been sent to the Louisiana Department of Corrections, at hard labor, on 6 separate occasions, and has served many years in Angola, including an escape from Angola. In all, he was sentenced to 22 years at hard labor. He has also been convicted of 6 separate misdemeanors, and is now awaiting sentence on a conviction of Illegal Carry of a Concealed Weapon. This episode occurred while he was confronting an adult he suspected of involving Donna in illegal marijuana activities."
Although the juvenile court recognized that this was Donna's first delinquency, it felt that her past conduct and lifestyle indicated:
"... there is a strong likelihood that this juvenile will commit another delinquent act if not placed where she can receive correctional treatment.
The juvenile is in great need of correctional treatment.
The fact of having an illegitimate child at age 15 years appears to have been accepted as appropriate. Religious training appears minimal, if, indeed, not non-existent. She has a very poor unstable family situation which shows no sign of improving. The family home is still located in a singlularly [sic] poor location. Defendant has exhibited no remorse for her conduct, although she is concerned about punishment, and runs with a group who, like this juvenile, are of an undesirable type. She received no correction from her father in this matter, who blames it all on someone else. This is not an unusual attitude of a person with a criminal background.
She needs correctional treatment because, in truth and in fact she has not exhibited any intention to change her ways; her only concern is that she may be punished for what she has been caught doing. The only way she can receive correctional treatment is in a custodial environment."
The court's reasons for the imposition of a custodial environment are not in accord with the general directives of C.J.P. Art. 86 and the specific provisions of C.Cr.P. Art. 894.1(A). In properly assessing the need for the imposition of a custodial environment for a first delinquency, the emphasis should be on the criminal conduct of the delinquent rather than the delinquent's low standard of living and association with an undesirable peer group. Other than this first delinquency, the record is void of criminal conduct by Donna.
Further, we find the court did not follow the guidelines in paragraph (B) of Article 894.1. The court gave no consideration to the aspect that it was Donna's older sister who gave Donna the marijuana cigarettes which ultimately led Donna to commit the delinquency (Article 894.1[B][4]). The court improperly ignored that this was Donna's first delinquency by finding only a "likelihood" that she would commit another delinquent act because of her past conduct and lifestyle (Article 894.1[B][7]). Finally, the court erred by failing to recognize the excessive hardship on Donna and her children (Article 894.1[B][11]). When Donna was adjudicated a juvenile delinquent, she *154 had one child five months of age, and shortly after learned she was pregnant with another child. The children are illegitimate and she does not live with their father, therefore, it is encumbent upon her to provide all parenting.
Because of the foregoing and in light of the particular facts of this case, we find the juvenile court failed to state for the record proper considerations and a factual basis for a disposition which necessitated the imposition of a custodial environment.

EXCESSIVENESS OF COMMITMENT
Lastly, Donna contends her sentence (commitment) was excessive.
Where excessive commitment has been complained of in juvenile proceedings, we must review the record to determine whether the juvenile court has imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs and the best interest of society. C.J.P. Art. 86; State In Interest of Bellow, 461 So.2d 1127 (La.App. 5th Cir.1984). Much discretion is granted to the court because of the special nature of the juvenile proceeding, but the court must balance the needs of the child with the best interests of society. State In Interest of Ray, 432 So.2d 312 (La.App. 5th Cir.1983).
Under the circumstances of the present case, we find the commitment is excessive. We recognize that Donna is in need of correction and guidance but not to the extent imposed upon hard core juvenile delinquents. This is her first delinquency and involved a small amount of marijuana. The disposition of Donna's case is harsh, which should be reserved for the more egregious delinquents. The record does not support that Donna is an egregious delinquent. However, the record strongly indicates that she is in need of guidance rather than a custodial environment separated from her two babies. Therefore, we agree with the recommendation in the predispositional report that Donna be placed on supervised probation for an indefinite period of time. Accordingly, under the circumstances of this case, we find the commitment is constitutionally excessive.

DECREE
For the foregoing reasons, the commitment of the juvenile, Donna Annette Garner, is hereby vacated and set aside. This case is remanded to the Eleventh Judicial District Court, sitting in its capacity as Juvenile Court, for re-disposition in accordance with the views expressed herein.
COMMITMENT VACATED; CASE REMANDED TO THE DISTRICT COURT SITTING IN ITS CAPACITY AS JUVENILE COURT FOR RE-DISPOSITION.
STOKER, J., concurs in the result and assigns written reasons for his concurrence.
DOUCET, J., concurs for the reasons assigned by STOKER, J.
STOKER, Judge, concurring.
I fully concur with the action of the majority in this case in vacating the commitment ordered by the district court sitting as a juvenile court and remanding the case for redisposition. As Donna Annette Garner was fifteen years old at the time of the commission of the delinquent act which is the subject of this case, the commitment "for a period of time not to exceed her 21st birthday" from the date of commitment is excessive. It would amount to a commitment of between five and six years.
Although I agree with the result reached by the majority, I respectfully state that I am not in accord with the views expressed by the majority concerning the juvenile court's use or application of Article 894.1 of the Code of Criminal Procedure. This is not a criminal case. It is a case governed by the Code of Juvenile Procedure. In such cases the juvenile court is required to follow Article 86 of the Code of Juvenile Procedure and that is all. State In the Interest of Racine, 433 So.2d 243 (La.App. 1 Cir.1983), writ denied, 440 So.2d 151 (La. 1983); State In Interest of George, 430 So.2d 289 (La.App. 3 Cir.1983) and State In Interest of Winstead, 385 So.2d 311 (La. App. 1 Cir.1980). In juvenile cases of the *155 nature before us, if a juvenile judge, for his convenience, wishes to follow the guidelines of LSA-C.Cr.P. art. 894.1, I see no objection to doing so. However, if the juvenile court makes such a choice, a failure to follow these guidelines in some respect is not error. What is required is that the juvenile court follow and comply with the guidelines of LSA-C.J.P. art. 86.
To suggest that, in commitment proceedings in a juvenile matter governed by the Code of Juvenile Procedure, a juvenile judge who chooses to follow LSA-C.Cr.P. art. 894.1 guidelines must fully comply with them, in effect gives the juvenile court the option of converting a juvenile commitment into a criminal sentencing. I disagree with the position of the majority that once a juvenile court elects to utilize Article 894.1 guidelines, it must comply with those guidelines.
On review on appeal all the appellate court is required to do is to consider whether the juvenile judge satisfied LSA-C.J.P. art. 86. However, it should be noted that in State In Interest of George, supra, we held that even under Article 86, the juvenile record must contain sufficient factual basis for the purpose of appellate review from a judgment of disposition.
NOTES
[1] There is a discrepancy in the record. In its written reasons for judgment the juvenile court ordered a three year commitment; however, in its formal judgment of commitment the juvenile was committed to the Louisiana Department of Corrections, Youth Division, for a period not to exceed her 21st birthday. Final judgments in juvenile court proceedings must be in writing and signed by the court. LSA-C.J.P. Art. 87; in accord see State v. Bouvier, 336 So.2d 906 (La. App. 4th Cir.1976). In the instant case the only disposition order which complies with the requisites of C.J.P. Art. 87 is the judgment of commitment; accordingly, we find the juvenile's commitment not to exceed her 21st birthday controlling.