DUFRESNE, Judge.
This is an appeal from a Juvenile Disposi-tional Hearing for criminal damages to property, and criminal trespass and a Dis-positional Hearing on a Motion to Modify Judgment of Disposition/Revocation of Probation.
After hearing extensive testimony, the trial judge committed the juvenile to the custody of the Department of Corrections for six months on the criminal damage petition and ninety days on the criminal trespassing petition, to be served consecutively.
Further, as a result of the hearing, the judgment of disposition was modified in that the probation was revoked and the *88 previously imposed commitment of five years or until age twenty-one, whichever is sooner, in the custody of the Department of Corrections was ordered executed.
The juvenile’s attorney is now appealing the sentence imposed and the revocation of probation and alleges two assignments of error:
1. The trial court erred in ordering the incarceration of the juvenile to the custody of the Department of Public Safety and Corrections for periods of six months and ninety days to run consecutively and ordering additional incarceration for five years for revocation of probation.
2. The trial court erred in revoking the juvenile’s probation in view of the psychiatric disability the juvenile is suffering from.
FACTS
In February of 1985, the fifteen-year-old juvenile was petitioned as a delinquent for having allegedly violated LSA-R.S. 14:62 (simple burglary). In March of 1985, the juvenile was again petitioned as a delinquent for allegedly violating LSA-R.S. 14:35 (simple battery), LSA-R.S. 14:67 (theft of merchandise valued at $114.00), and LSA-R.S. 14:108 b (resisting an officer). The juvenile admitted to one count of simple burglary of a vehicle (he was petitioned with three counts), a result of which the remaining petitions of delinquency alleging simple burglary were dismissed and the other petitions alleging offenses of resisting an officer, theft, and simple battery were continued without date by the state. On August 21, 1985, the juvenile was adjudicated a delinquent for the petition alleging simple burglary of a vehicle. He was committed to the Department of Corrections for five years or until his twenty-first birthday, whichever is sooner. This commitment was suspended and he was placed on probation for five years or until his twenty-first birthday, the conditions of probation being, among others that he be placed in the Westbank Education Center and that he not violate any state, federal or local laws.
In January of 1986, the juvenile was again petitioned as a delinquent for allegedly violating LSA-R.S. 14:56 (simple criminal damage to property), LSA-R.S. 14:63 (criminal trespassing), LSA-R.S. 14:103(A)(3) (disturbing the peace) and J.P. Ordinance 12:9 (being in a public place between the hours of 11:00 p.m. and 5:00 a.m.). On March 5, 1986, the juvenile admitted to criminal damage to property and criminal trespass, a result of which the two remaining petitions alleging delinquency were dismissed. On March 13, 1986, a Motion to Modify Judgment of Disposition/Revocation of Probation was filed.
On May 29, 1986, the two aforementioned dispositional hearings were held. The first hearing was for the disposition of the petitions alleging simple criminal damage to property and criminal trespassing. At this time, Mrs. Debra Benner of Juvenile Court Services recommended that the juvenile be committed to the custody of the Department of Corrections for incarceration at L.T.I. Her recommendations were based in part on Dr. Lawrence Hill’s report and, the fact that the Juvenile Court Service Center did not want the juvenile to presently return because of his behavioral problems.
Dr. Jay W. Seastrunk, a psychiatrist and head of DePaul’s Hospital in-patient unit, also testified. It was his opinion that the juvenile was functioning psychologically at one and one-half or two, that he had a personality disorder caused by early deprivation, and that the defendant’s previous treatments have been unsuccessful because they were not aimed at his primary problem (early deprivation). Dr. Seastrunk’s ultimate recommendation seemed to be intensive treatment at DePaul’s.
ASSIGNMENT OF ERROR NO. 1
The defense contends that the commitment imposed is excessive because it is the most restrictive disposition available (incarceration) rather than the least restrictive, as is mandated by C.J.P. art. 86. He argues that there was an alternative available; namely, treatment at DePaul’s in-patient unit which would be privately funded for ninety days.
*89 Art. I, Sec. 20 of the Louisiana Const, of 1974 prohibits “cruel, excessive or unusual punishment”. Where excessive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court has imposed the least restrictive dispositions consistent with the circumstances of the case, the child’s needs, and the best interest of society. C.J.P. art. 86; State in the Interest of Garner, 484 So.2d 149 (La.App. 3rd Cir.1986). Much discretion is granted to the court because of the special nature of juvenile proceedings, but the court must balance the needs of the child with the best interest of society. State in the Interest of Ray, 432 So.2d 312 (La.App. 5th Cir. 1983). Although C.J.P. art. 86 does not specify that the record shall contain a particularization of the facts supporting the juvenile commitment, the record must nonetheless provide us with criteria with which to evaluate the disposition. State in the Interest of Hickerson, 424 So.2d 1233 (La.App. 1st Cir.1982), the court went as far as to say that the judge did not abuse his discretion in refusing to consider alternatives to incarceration at the third disposi-tional hearing considering the violent nature of the crime and the juvenile’s behavioral problems. Although the predisposition report recommended probation, it was not a mandatory recommendation, and as it appears the trial judge was concerned with the interest of society, as well as the child, the commitment of the juvenile to the Department of Corrections was not an abuse of discretion.
In the present case, Dr. Seastrunk testified at the Dispositional Hearing that DePaul’s intensive in-patient unit would be beneficial to the juvenile because it would be specifically oriented to his particular personality disorder caused by early deprivation and separations. Ideally, he stated that the juvenile should be treated in the intensive unit for six months to one year, but the private funding available to the juvenile would only cover treatment for ninety days.
There was no proof offered as to whether money for treatment would be available after ninety days, nor was it shown if state funds would be available to put the juvenile in a half-way house after his treatment at DePaul’s. Dr. Seastrunk was of the opinion that L.T.I. would be very detrimental to the youth and would teach him to be a great sociopath and educated criminal. The trial judge considered all these factors in committing the juvenile to the custody of the Department of Corrections and felt that private care for only ninety days followed by commitment to the Department of Corrections would create another abandonment and would only aggravate the youth’s underlying disorder, and that consequently, the best interests of the juvenile would be served by commitment.
Given the child’s very lengthly juvenile record and the testimony to the effect that he has shown no progress in his previous treatment, the trial judge did not abuse her discretion in committing the juvenile to the custody of the Department of Corrections. The trial judge very carefully considered all the testimony presented at the hearing and properly balanced the best interests of the child with that of society, and came to the conclusion that commitment was the solution. Considering a judge’s wide discretion in juvenile matters, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
It is submitted by the defense that the probation imposed by assignment to the West Bank Educational Service Center as an intervention did not address the cause of the juvenile’s behavior, and thus, was destined for failure at the outset.
Judges are given wide discretion in probation matters, including revocation of probation. C.J.P. art. 93 gives authority for such revocation. It reads as follows:
A judgment of disposition may be modified if the court finds that the condition and circumstances justify the modification.
In delinquency proceedings, if a judgment of disposition places a child on probation, the judgment may not be modified to assign the child to the custody of *90 the Department of Corrections unless the court finds that a condition of probation has not been observed.
At a probation revocation hearing, a violation of the conditions of probation may be shown by established criminal conviction or by actual proof of the commission of the crime, apart from the conviction. Evidence of delinquent acts may similarly be shown to establish the violation of the conditions of probation in the case of juveniles. State v. Hall, 487 So.2d 462 (La.App. 3rd Cir. 1986).
State in the Interest of Sterling, 441 So.2d 372 (La.App. 5th Cir.1983) and State v. Hall, supra, illustrate the discretion given to a judge in probation matters. In the former case, Phyllis Sterling, a juvenile was placed on active probation for three years for aggravated battery, during which period she unsatisfactorily completed the terms of her probation by violating a criminal statute (attempted theft). Her probation was subsequently revoked and the previously imposed three year suspended commitment to the Department of Corrections was ordered executed. This revocation was upheld on appeal, despite defense counsel’s argument that the juvenile was improperly placed in St. Elizabeth’s Home, so she could not be penalized for her acts committed there, resulting in her termination from the home.
In Hall, supra, a sixteen-year-old juvenile was placed on supervised probation, after admitting to two counts of simple burglary and one count of theft. While on probation, a petition was filed against Hall alleging reckless operation of a vehicle, and he was also involved in a fight in which several boys were seriously injured. As a result, his probation was revoked and he was committed to the Department of Corrections for a period not to exceed his twenty-first birthday. The revocation was affirmed, as it was found that the juvenile violated one of the conditions of probation, more specifically, that he obey all local, state and federal laws and ordinances.
In the instant case, while the juvenile was on probation for simple burglary, he violated certain conditions of probation, namely he violated certain state criminal laws and he failed to cooperate with his placement in the Juvenile Court Service Center. In short, he was terminated from the Center for fighting, disrespect of teachers, using profanities, smoking and other behavioral problems. Tom Adoue, Supervisor of Behavior Management at the Center, gave a thorough and very lengthly report as to the youth’s specific behavior problems at the Center. Martha Jordan, the juvenile’s psychotherapist at the Center, testified that she felt that no additional therapy would help the juvenile and that he was in need of some kind of external control.
There is no question that the youth did in fact violate the terms of his probation. Based on the cases discussed and the wide discretion given judges in probation matters, the probation was properly revoked, despite counsel’s argument that the probation was destined for failure at the outset because his prior treatment was not aimed at the cause of the juvenile’s behavior.
Given lack of proof of state money to successfully rehabilitate the youth and given the juvenile’s very lengthy record, in addition to his violation of the terms of probation, the juvenile judge did not abuse her discretion in revoking the probation.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the juvenile court is affirmed in all aspects.
AFFIRMED.