513 So.2d 554 (1987)
STATE of Louisiana in the Interest of TLR. consolidated with
STATE of Louisiana in the Interest of WS,III.
Nos. 19218-CAJ, 19219-CAJ.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*555 Raymond Lee Cannon, Tallulah, for appellants.
William J. Guste, Jr., Baton Rouge, Atty. Gen., James David Caldwell, Dist. Atty., Felicia Toney Williams, Asst. Dist. Atty., Tallulah, for appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
The juveniles, WS,III and TLR, both 15 years of age, were adjudicated delinquents for committing simple arson and each sentenced to the custody of the Department of Corrections for a period of seven years with the sentence not to extend beyond their 21st birthday. LSA-R.S. 14:52; LSA-C.J.P. arts. 13(5), (7); 83 A, (4)(a); 86.[1] They appeal the sentences as being illegally excessive.
We set aside the commitments and remand.

FACTS
On February 2, 1987, the McCall Senior High School in Tallulah, Louisiana, sustained over $40,000 damage due to a fire. A petition was subsequently filed seeking to have the juveniles adjudicated as being delinquents for committing simple arson. At a consolidated adjudication hearing held on February 17, 1987, the juveniles pled guilty to committing simple arson. The juvenile court accepted the pleas and adjudicated the juveniles as being delinquents. On February 24, 1987, at a disposition hearing, the court acknowledged reviewing a predisposition report on each of the juveniles and sentenced them as previously related.
Assignment of ErrorAre the imposed sentences excessive?

LAW ON THE REVIEW OF EXCESSIVENESS OF SENTENCE IN JUVENILE PROCEEDINGS
A juvenile has the same constitutional rights against excessive punishment as an adult. Where excessive commitment is the complaint in a juvenile proceeding the Court of Appeal must review the record to determine whether the juvenile court has imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society. State in Interest of A.A., 504 So.2d 1176 (La.App. 5th Cir.1987); LSA-C.J.P. art. 86. Although the juvenile court is not required to give reasons for *556 the chosen sentence the record must contain some factual basis for appellate review. A juvenile court is not required to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1. However, the sentencing rules therein set forth are compatible with the principles of LSA-C.J.P. art. 86 and LSA-C.Cr.P. art. 894.1 can be used to develop the record so the reviewing court can better evaluate the juvenile court's commitment choice. State in Interest of Garner, 484 So.2d 149 (La.App. 3d Cir.1986).
Much discretion is granted the juvenile court in its selection of an appropriate sentence. State In Interest of Garner, supra; State In Interest of Bellow, 461 So.2d 1127 (La.App. 5th Cir.1984); LSA-C.J.P. art. 86; LSA-C.Cr.P. art. 894.1.
The juveniles argue the sentence imposed on each of them is excessive because they are first offenders, each is remorseful, and the record does not support a determination that incarceration is necessary to protect themselves and the public.
The record shows that at the disposition hearing the juvenile, TLR, testified he was suspended from school on the day of the incident for being disrespectful for authority. Shortly thereafter he met the other juvenile, WS,III and was informed that WS,III had also been suspended that day for disrespectful conduct. The two of them met Billy Coleman, age 19, and John Knox, age 17 or 18. Coleman appeared intoxicated and told the group he had been drinking since earlier in the morning. During the group's conversation the subject of setting the school on fire arose. TLR related that "they" provided some gloves and that he accompanied the group to his residence where he made gasoline available to Billy Coleman. Shortly thereafter, when the group approached the school, Coleman made some rags from an old shirt, poured the gasoline into bottles, and stuffed the rags into the bottles. John Knox assisted Coleman in the preparation of the bottles while the juveniles observed. Coleman then put the gloves on his hand and broke a schoolhouse window by striking it with his fist. Coleman and Knox then gained entrance to the school through the window and opened a door through which the juveniles entered. TLR concluded by testifying he and WS,III told the others not to set the school on fire and both departed the school as Coleman and Knox actually ignited the rags and threw the bottles filled with gasoline at various locations inside the school.
The juvenile WS,III's testimony corroborates that of TLR. WS,III did add that Coleman and Knox suggested the fire but that he procured the gloves for John Knox while TLR got the gasoline for Billy Coleman. He also added that Billy Coleman gave the juveniles rags but they refused to participate in stuffing them into the bottles. WS,III told them not to make the fire bombs but Coleman and Knox did not listen. WS,III concluded by relating he initially thought Coleman and Knox were joking but realized they were serious after acquiring the gasoline.
Samuel Dixon, principal of the school, testified WS,III had a previous incident where he broke into the school and spray-painted a wall. WS,III had been suspended for that incident. He also added WS,III was a disruptive student and was suspended on the day of the fire for making excessive noise in class. He added that TLR had also been suspended on that same day for similar disruptive conduct of walking over the classroom and interrupting class. He also added that TLR had admitted selling drugs on school campus.
TLR denied any prior experimentation with, or sale of, illegal drugs. TLR's mother, testified she heard her son admit that he had been known to drink beer "at one time or another" and had experimented with drugs "at one time." She also related that Mr. Dixon, the principal of the school, telephoned her at 3:00 p.m. about her son's suspension and that she allowed him to go to a weight room to exercise for the rest of the afternoon rather than remain in their residence.
The mother of WS,III, related that her son had been in trouble at the school before when he spray-painted the walls of the *557 school. She added that she made him scrub the paint off for three days in a row in order to discipline him. She also related that she and her son had a history of problems with Mr. Dixon, the school principal, and on the day of the fire the principal informed her of WS,III's suspension but that she did not discipline her son.
The predisposition reports on the juveniles reveal that WS,III did provide the gloves and TLR did make available the gasoline used in the arson. The instant suspension was the first for TLR and his problems at school previous to this were minor. TLR admitted experimenting with drugs and alcohol on one occasion. WS,III had been suspended once before the instant situation and had a history of being a "problem child" at school. The prior suspension concerned spray-painting the school walls after forced entry of the premises. WS,III admitted experimenting with beer on one occasion but denied any use of drugs. Neither defendant has any prior criminal activity of record. WS,III did not manifest remorsefulness.
The juvenile judge in her reasons for imposition of sentence on these juveniles reviewed many of the guidelines set forth in 894.1. In her discussion on WS,III she pointed out that the principal indicated WS,III had been a problem student and had been suspended twice during the current year. He had spray-painted the school building on one occasion. The judge pointed out he had experimented with alcohol. The court stressed that his suspension from school created no justification for his serious crime which damaged the school in the amount of $40,000 and that WS,III had made no effort to compensate for this loss. The judge observed that WS,III showed no remorse in the courtroom for his crime and if he was placed on probation there was a serious danger that he would commit another crime. The judge concluded for these reasons that WS,III was in need of correctional treatment that could only be provided by incarceration and a lesser sentence than the one she imposed would deprecate the seriousness of the crime.
The judge's sentencing reasons on TLR were similar to those given in connection with WS,III's sentence. She observed he had been suspended for disrespect of the teacher and had experimented with drugs and alcohol. She stressed that TLR's suspension provided no justification for the serious crime which he had committed and that he had made no effort to compensate for the damage he caused. The judge concluded by finding that if TLR was placed on probation there was a serious danger that he would commit another crime and he was in need of correctional treatment that would be provided by incarceration.
The record supports the judge's conclusions that correctional treatment in a custodial environment was mandated. However, the seven year sentences imposed on each of the juveniles is apparently excessive. The record reveals the juveniles were culpable as principles to simple arson as they had provided the gloves and gasoline used in the arson and were at the school when it occurred but their conduct was passive when compared to Coleman and Knox who actually started the fire by lighting and tossing the gasoline rag-filled bottles.
The sentences imposed are the most restrictive possible as they require incarceration for the maximum length of time as the sentence requires imprisonment until the juveniles' 21st birthdays. See LSA-C.J.P. art. 89F(1).[2] Considering the juveniles' lack of any extensive connection with drugs or alcohol and no other prior criminal activity and their relatively minor prior behavioral problems at school, the sentences *558 imposed exceed the least restrictive dispositions considering the juveniles' situations and the needs of society. State In Interest of R.R., 503 So.2d 87 (La.App. 5th Cir.1987), writ. den., 503 So.2d 1007 (La.1987). The record indicates that a three year period of incarceration would be the maximum sentence that would be in accordance with LSA-Const. Art. 1, § 20 (1974) and the Code of Juvenile Procedure.

CONCLUSION
The commitments are vacated. Case remanded to the district court in its capacity as juvenile court for redisposition.
NOTES
[1] § 52. Simple arson

A. Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51.
B. Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.
. . . . .
Art. 13. Definitions
Except where the context clearly indicates otherwise, as used in this Code:
. . . . .
(5) "Felony" means an offense that may be punished by death or by imprisonment at hard labor.
. . . . .
(7) "Delinquent act" means an act committed by a person less than seventeen years of age, and designated an offense under the statutes or ordinances of this state ...
Art. 83. Disposition; adjudication of delinquency
A. In cases in which a child has been adjudicated a delinquent the court may:
. . . . .
(4)(a) Commit a child adjudicated delinquent, and thirteen years of age or older at the time of the commission of the delinquent act or acts, to the custody of the Department of Public Safety and Corrections;
. . . . .
Art. 86. Disposition; generally
A. The court should impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
[2] Art. 89. Duration of disposition

. . . . .
F. (1) In delinquency proceedings, a judgment of disposition shall not remain in force after a child reaches his twenty-first birthday.
. . . . .