595 So.2d 702 (1992)
STATE of Louisiana
v.
R.B., JR.
No. 91-KA-777.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
John M. Mamoulides, Dist. Atty., James Mann, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of counsel, Office of the Dist. Atty., Gretna, for plaintiff-appellee.
A. Bruce Netterville, Gretna, for juvenile-appellant.
Before KLIEBERT, C.J., and DUFRESNE and GOTHARD, JJ.
KLIEBERT, Chief Judge.
This is an appeal from a juvenile proceeding in which the appellant, R.B., Jr., was adjudicated a delinquent and was committed to the custody of the Department of Public Safety and Corrections/Louisiana Training Institute until his 21st birthday. R.B., Jr. was 14 years of age at the time of the hearing. The juvenile appeals, urging that the commitment is excessive. For the reasons that follow, we affirm.

FACTS
At the adjudication hearing the 12-year-old victim, A.T., testified that on May 9, 1991, R.B., Jr. approached him at school during gym class. R.B., Jr. pulled up his shirt, displaying a gun tucked in his shorts, then pointed the gun at A.T. and demanded A.T. give him his Cincinnati Reds baseball cap. A.T. gave the cap to R.B., Jr. and walked away. About two or three minutes later R.B., Jr. returned A.T.'s cap, telling *703 him that the gun was only a play gun. As A.T. was leaving school later that day, he saw police officers with R.B., Jr. and he realized the gun he had seen was real. He reported the incident to his mother the next day after he learned that R.B., Jr. had been arrested and was in police custody. He testified that no one else had seen the incident and that he did not report it sooner because he was scared.
R.B., Jr.'s version of the incident differs greatly from the victim's. R.B., Jr. testified that while he was playing volleyball in the gym he noticed A.T. crying. He walked over to A.T. and returned his baseball cap, which R.B., Jr. said had been given to him by some other boys. Both R.B., Jr. and his parents testified that R.B., Jr. had a collection of hats, but they were not of the type he allegedly took from A.T. During his testimony R.B., Jr. further asserted that if he had wanted to take A.T.'s cap, he could have taken it without using a gun because A.T. already was afraid of him due to R.B., Jr.'s reputation for fighting.
According to the testimony of R.B., Jr. and of his parents, he was arrested after the gun was taken from him by his school-bus driver on the afternoon of May 9, 1991. Apparently the driver realized the juvenile had a gun because he heard him click it repeatedly on the bus. The driver confiscated the gun, dropped off the children, including R.B., Jr., and then returned to the school and reported the incident to the principal.
The principal in turn called the police and then called R.B., Jr.'s father and asked him to bring his son back to school. When R.B., Jr. returned to school, he was arrested for carrying the weapon and was taken to Rivarde Detention Center. Apparently R.B., Jr. was not charged with the armed robbery until the following day, when A.T.'s mother reported the incident to the principal.
Throughout the proceedings, R.B., Jr. denied that he pulled a gun on A.T. He testified that he found the gun in the gym bleachers that afternoon, after the incident with A.T.'s cap had already occurred.
After listening to this conflicting testimony, the trial judge found R.B., Jr. guilty of armed robbery. At the disposition hearing on August 15, 1991, the judge heard the testimony of R.B., Jr.'s probation officer and then committed the minor to the custody of the Department of Public Safety & Corrections/Louisiana Training Institute until his 21st birthday. In imposing the sentence, the judge advised the minor that she would release him from LTI when he completed the program and received the maximum benefit.
Thereafter a motion for appeal was filed on behalf of the minor.

ASSIGNMENT OF ERROR
The appellant contends the sentence imposed on him "is excessive and should be vacated, set aside and reduced in proportion with the facts of the instant appeal."
Our state constitution prohibits "cruel, excessive, or unusual punishment." La.Const. Art. 1, Sec. 20. Where excessive commitment is the issue on appeal of a juvenile proceeding, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society. La.C.J.P. art. 86; State in Interest of A. A., 504 So.2d 1176 (5th Cir.1987); State in Interest of R.R., 503 So.2d 87 (5th Cir.1987), writ denied 503 So.2d 1007.
Much discretion is granted to the court in juvenile matters because of the special nature of the proceedings, but the court must balance the needs of the child with the best interest of society. State in Interest of Ray, 432 So.2d 312 (5th Cir. 1983).
In juvenile proceedings the trial court is not required to follow the sentencing guidelines of La.C.Cr.P. art. 894.1; rather, after the juvenile is adjudicated a delinquent the court should follow La. C.J.P. arts. 83 and 85 to determine an appropriate disposition. State in Interest of Racine, 433 So.2d 243 (1st Cir.1983), writ denied 440 So.2d 151 (La.1983). There is *704 no requirement that the court give reasons for its judgment. State in Interest of Winstead, 385 So.2d 311 (1st Cir.1980); see also, State in Interest of Brown, 385 So.2d 382 (1st Cir.1980).
Although the trial judge is not required to give reasons, the record cannot be silent. It must contain some factual basis for the sentence if the right of appeal granted by La.C.J.P. art. 98 is to be effectively implemented. See State in Interest of Bellow, 461 So.2d 1127 (5th Cir.1984) and State in Interest of George, 430 So.2d 289 (3rd Cir.1983).
There is ample evidence in the record before us to support the sentence imposed. The predisposition report states that R.B., Jr. was placed on probation in November 1990 on charges of simple assault and illegal use of a weapon or dangerous instrument. The probation supervision did not deter his escalating delinquent behaviors, however. In addition, according to his probation officer, the minor showed no remorse for his past behavior and displayed a very negative attitude in his initial contact with the probation officer.
The predisposition report further indicates that three months after R.B., Jr. was placed on probation, his behavior at school became uncontrollable. School records indicate that he was not only disrespectful to authority but also noncompliant with school rules. Consequently, on February 21, 1991 he was held in contempt of court and placed on the electronic monitoring program for 15 days. On March 14, 1991 he was again before the court, this time on a charge of contempt for escalating problems at school. As a result the juvenile was sentenced to 15 days in Rivarde Detention Center.
Thereafter, R.B., Jr. was referred for a psychiatric evaluation, which resulted in a recommendation that R.B., Jr. and his parents undergo counselling. The psychiatrist noted that R.B., Jr.'s parents have been resistant to any outside intervention and tended to minimize the seriousness of the boy's offenses. Approximately one week after beginning therapy, R.B., Jr. committed the present offense.
In the court's written reasons for judgment the trial judge stated, in pertinent part:
In the instant case, this court is presented with a juvenile, R.B., Jr., who has been given every opportunity through previous probationary periods to rectify his past criminal behavior. * * *
* * * * * *
The probation officer in this case observed that R.B., Jr. "has clearly indicated that he is a danger to himself, as well as [to] the lives and welfare of others." The officer noted that while R.B., Jr. "has verbalized remorse for his actions in the past, ... his actions sent a totally different message." * * *
Although it is not necessary to apply the sentencing guidelines of C.Cr.P. Art. 894.1 to juvenile cases, this court finds that based on the record, the evidence, and on the testimony of witnesses:
(1) There is an undue risk that during the period of a suspended sentence or probation the juvenile will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the juvenile's crime.
The only mitigating evidence under the guidelines that this court can find is that perhaps the juvenile did not contemplate that his criminal conduct would cause or threaten serious harm. But.... this court is convinced he knew the potential harm and the consequences of pulling a gun on someone and demanding their property.
Given these factors, we conclude the record adequately supports the sentence imposed. Despite the probation officer's recommendation that the juvenile be sentenced to LTI for only six months, it is clear that the trial judge felt the sentence imposed was the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the *705 best interest of society. Considering a judge's wide discretion in juvenile matters, we find no error in the sentence imposed.

DECREE
For the foregoing reasons, the judgment of disposition is affirmed.
AFFIRMED.