641 So.2d 633 (1994)
STATE of Louisiana In the Interest of J.G.
No. 94-CA-194.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1994.
*634 Donald J. Cicet, LaPlace, for defendant/appellant, J.G.
John M. Crum, Jr., John L. Diasselliss, III, Dist. Attys. Office, LaPlace, for plaintiff/appellee, State of LA.
Before BOWES, DUFRESNE and WICKER, J J.
BOWES, Judge.
The state instituted these proceedings by filing a petition (No. J-7326) in Juvenile Court for the Parish of St. John the Baptist. Subsequently, the state filed a second petition (No. J-7319) seeking adjudication of J.G. as a delinquent based on two counts of aggravated assault, LSA-R.S. 14:37, and a third petition seeking adjudication of J.G. as a delinquent based on one count of criminal trespass, LSA-R.S. 14:63, and one count of disturbing the peace, LSA-R.S. 14:103.
After an adjudication hearing, the trial judge issued a judgment adjudicating J.G. delinquent of two counts of aggravated assault (Petition No. J-7319), one count of disturbing the peace (Petition No. J-7419), and one count of simple burglary (Petition No. J-7326); however, she found him not guilty of criminal trespass (Petition No. J-7419, Count 1) and unauthorized use of a movable (Petition No. J-7325).
At the disposition hearing of January 4, 1994, the judge committed J.G. to the Department of Public Safety and Corrections/Louisiana Training Institute until his 21st birthday. The juvenile now appeals.
In adjudicating the juvenile a delinquent, the trial court astutely made the following findings of fact, which we adopt substantially as our own, with only a few minor changes for clarification.

J-7319
J.G. is charged herein with violation of LSA R.S. 14:37, aggravated assault, two counts.

*635 The evidence revealed that J.G. and his mother, Kathy Green lived next door to, but in the same building as, the complaining witnesses, Gabrielle Spain and Dwaine Peden. On or about May 23, 1993, Ms. Spain, Mr. Peden and family and friends had a barbecue in their yard. The complaining witnesses and Gussie Lee testified that J.G. drove up in an auto with [two other males named] Rope-A-Dope and Barry Howard; that Rope-A-Dope started fighting with Peden; that J.G. went to the car, came out with a black 32 revolver with tape on it and pointed the gun in the direction of the barbecue crowd, causing them to disburse and seek cover. Someone then took the gun away from J.G., and J.G., Rope-A-Dope and Barry drove away.
J.G.'s version of these events supported by Barry Howard, was that he and Barry were seated upstairs and Rope-A-Dope arrived and pulled out the gun.
The Court finds that the more credible witnesses were the complaining witnesses and particularly Ms. Lee, a guest at the barbecue. The Court finds that the State proved the charges against J.G. beyond a reasonable doubt.

J-7419
J.G. is charged herein with violation LSA R.S. 14:63, criminal trespass, and LSA R.S. 14:103, disturbing the peace.
The testimony revealed that on August 3, 1993, the same date J.G. appeared in Court for other matters, J.G. allegedly entered Gabrielle Spain's home without her permission and bean searching for a television set and using loud, threatening and foul language. J.G., his mother Kathy Green and Temicia Fernell testified they were outside on their porch which adjoins Ms. Spains' porch, and J.G. did not enter the Spain household. However neither J.G. nor his witnesses satisfactorily refuted [the allegation] that he used loud, boisterous, foul or threatening language with Ms. Spain.
The Court finds that the State did not carry its burden of proof with regard to RS 14:63, but that it did meet that burden regarding RS 14:103.

J-7325
J.G. is charged herein with violation of LSA R.S. 14:68, unauthorized use of a movable.
The evidence revealed that J.G. was stopped by deputies in connection with the burglary referred to below (J-7326) in the early morning hours of July 30, 1993. At that time he was driving a 1987 white Dodge pickup truck owned by David Becnel. Mr. Becnel testified that he had given permission to use the truck to an employee, Galland Jones, who lived with J.G. and his mother at the time, in connection with his work duties. J.G. testified that Jones gave him permission to use the truck at that time and [that] he had used it several times before with permission of Galland Jones. Mr. Jones was unable to be reached to verify this, but it was not disputed by Kathy Green. Mr. Becnel did not initiate these proceedings.
The Court finds that the State failed to carry its burden of proof for this charge.

J-7326
J.G. is charged herein with violation of LSA R.S. 14:62, simple burglary of a truck.
The evidence revealed that Chad Guidry was at Shell Station # 7, Laplace, when he looked outside and noticed J.G., Rope-A-Dope and another person looking at his truck. (They were in a white pickup truck). Shortly thereafter he saw them carrying a [sic] object which appeared to be wrapped up in a white towel to their truck, from the direction of where his truck was parked. He then found that a radio, valued from $100-$175 was missing from his truck. The Sheriff's office was notified, and at about 2:00 a.m. the next morning, Deputy Hidalgo located J.G. driving a 1987 White Dodge pickup, matching the description given by Mr. Guidry. J.G. was the only person in the vehicle. The radio, later identified as Mr. Guidry's, was on the front passenger seat, and a dark blue steel 32 revolver on the floorboard on the driver's side.

*636 J.G. claims Rope-A-Dope said he was going to steal the radio, but he didn't know it had actually been stolen. J.G., on direct and cross-examination made many conflicting statements. In short, J.G. was not believable.
This Court finds that the State carried its burden of proof with regard to this charge, and the Court is convinced, beyond a reasonable doubt, that J.G. is guilty of this offense.
Considering the delinquent acts committed by the juvenile, and also considering his twice being in possession of a firearm, this Court finds J.G. to be a Delinquent.
On appeal, the juvenile presents two assignments of error: that the trial court erred in failing to find an evidentiary presumption adverse to the state, and the trial court erred in imposing a maximum sentence.

EVIDENTIARY RULING
During the presentation of the state's case regarding the aggravated assault allegations (Petition No. J-7319), several witnesses testified that an individual named "Antonio" was present at the time of the incident and tried to take the gun away from either the juvenile or Rope-A-Dope.
At the conclusion of the state's case concerning these charges, the juvenile's attorney moved for an involuntary dismissal on the charges, and then requested the court to draw an evidentiary inference that if a witness "Antonio" had been produced by the State and brought to court to testify, his testimony would have been adverse to the state's case. This motion was denied.
LSA-R.S. 15:432 reads as follows:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.
However, the law is clear that the presumption of LSA-R.S. 15:432 does not arise if the witness is equally available to both the state and the defense, for then the evidence is not "under the control" of either party. State v. Simms, 381 So.2d 472 (La.1980); State v. Sharlow, 493 So.2d 213 (La.App. 5 Cir.1986); writ denied, 496 So.2d 329 (La. 1986).
In the present case, the witness "Antonio" was equally available to both the state and the defense. In his argument, defense counsel asserted that nobody seemed to know Antonio's last name and that he felt it was in the capacity of the state to find out his last name, since he was a friend with other state witnesses, and to subpoena him to testify at trial. However, the evidence revealed that defendant's own witness, Barry Howard, knew Antonio's last name. Therefore, had the defendant felt that Antonio was an essential witness, he could have subpoenaed the witness himself. Since we conclude that this witness was not under the control of the state and was equally available to both the state and defendant, the presumption/inference requested by defendant does not apply and the trial judge correctly denied the motion. See State v. Lee, 465 So.2d 806 (La. App. 2 Cir.1985), writ denied, 468 So.2d 572 (La.1985).
Accordingly, we find no merit in this assignment of error.

EXCESSIVE SENTENCE
In this assignment, the juvenile alleges that the trial court erred in imposing the maximum sentence of incarceration at LTI until his twenty-first birthday when an alternative plan for rehabilitation had been offered to the court.
Art. I, Sec. 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or *637 unusual punishment." Where excessive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society. LSA-Ch.C. Art. 901B[1]; State in Interest of A.A., 504 So.2d 1176 (La.App. 5 Cir.1987); State v. B.E., 616 So.2d 211 (La.App. 5 Cir. 1993).
Much discretion is granted to the court in juvenile matters because of the special nature of the proceedings, but the court must balance the needs of the child with the best interest of society. State in the Interest of Ray, 432 So.2d 312 (La.App. 5 Cir.1983); State v. R.B., Jr., 595 So.2d 702 (La.App. 5 Cir.1992).
In determining an appropriate disposition, the court is guided by LSA-Ch.C. art. 901. Paragraphs C and D of that article provide the following guidelines:
C. Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:
(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
(3) A lesser disposition will deprecate the seriousness of the child's delinquent act.
D. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:
(1) The child's delinquent conduct neither caused nor threatened serious harm.
(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.
(3) The child acted under strong provocation.
(4) There were substantial grounds tending to excuse or justify the child's delinquent conduct, though failing to establish a defense.
(5) The victim of the child's delinquent conduct induced or facilitated its commission.
(6) The child or his family has compensated or will compensate the victim of his delinquent conduct for the damage or injury that the victim sustained.
(7) The child has no history of prior delinquency or has led a law-abiding life for a substantial period of time before the commission of the instant delinquent act.
(8) The child's delinquent conduct was the result of circumstances unlikely to recur.
(9) The character and attitudes of the child indicate that he is unlikely to commit another delinquent act or crime.
(10) The child is particularly likely to respond affirmatively to probationary treatment.
(11) The commitment of the child would entail excessive hardship to himself or his family.
At the dispositional hearing, the trial court considered the testimony of Eilene Mattingly, a juvenile services officer with the Office of Youth Development, who conducted a pre-disposition investigation and report on J.G. Her report reflected that the juvenile had a history of juvenile delinquency and had been placed in the custody of the Louisiana Department of Public Safety and Corrections for a short period of time for the offense of aggravated battery; that he had difficulty in school and had failed a number of grades; and that his neighborhood environment was "very bad" (although his mother had taken two jobs in an attempt to remove him from this environment).
*638 Ms. Mattingly recommended that the juvenile be committed to the secure environment of L.T.I. until his 21st birthday where he could be given the benefit of basic skills training pursuant to his G.E.D. and guidance by psychologists or psychiatrists to help him become more aware of socially acceptable behavioral patterns, subject to the possibility of an early release from L.T.I. depending on the juvenile's progress.
This juvenile's mother and grandmother were at the disposition hearing, but were apparently too upset to testify. Thus, defense counsel and the state entered into a stipulation regarding the testimony of the juvenile's mother and grandmother if they testified. It was stipulated that the juvenile's mother recognized her son's environment was not very good and was a significant contributing factor to J.G.'s problems; that J.G.'s mother would make every effort to get a new environment for J.G. and has, in fact, undertaken a second job to obtain better accommodations. It was further stipulated that while J.G.'s mother was securing a better environment, J.G. would not live in the housing project, but would rather live with his grandmother in her home located in the Sugar Ridge Subdivision in Laplace.
After listening to all the evidence, including J.G.'s assertion that he would straighten up, go to school, and be obedient to other people, the trial judge accepted Ms. Mattingly's recommendation and committed J.G. to L.T.I. until his 21st birthday. In so doing, she made the following observations and reasons:
All right, As I said before, this matter was continued for an alternative plan to be submitted. And this Court admires Mrs. G. for realizing that the environment elsewhere may be better for J.G. and getting two jobs. And I can't say enough about that.
As far as the maternal grandmother taking care of J.G. being released to J.G. I think J.G., your history from everything that we have here on you right now, does not lead us to believe that whether you live with your mother or your grandmother that your behavior will change.
And, Mr. Cicet, it's not, J.G. has not been penalized in the past six months. He has not been in a penal institution. He simply has been detained for his benefit and that of others until this matter has been concluded.
We've been very concerned about the direction which you're headed, J.G. You're headed in the wrong direction all the way. And the crimes you've committed have not just been petty crimes. They have been serious crimes.
They are the kinds of things that if you were seventeen years old or older, you'd be charged as an adult. You'd be tried as an adult and you'd be treated as an adult as far as penal institutions are concerned. Which means that at the age of seventeen on, if you're convicted of a felony, you go to Angola. We don't want you there. You don't belong there. We don't think you do. You're an intelligent young man. You do have a future ahead of you. We want to straighten you out while we have to time to do it. Your mother has tried. We admire her for trying. She's still trying. And I sympathize with her over all of these problems. You've caused her a lot of heartache and your grandmother too. But we all want what is best for you at this time. And we don't think you can make the right decisions.
I don't know if you're hanging out with the wrong crowd or just don't want to follow the rules of society in which we live. I don't know what the problem is. I'm not sure. But at Louisiana Training Institute they are going to do an evaluation on you. They are going to find out what the problem is. When they get to the heart of the problem they're going to treat you for it and they are going to place you where they feel like you belong. While you're getting that treatment you will also be trained in some sort of skill. You will also be getting your G.E.D. And when you do get out of there, whether it's eighteen, seventeen, or nineteen, or twenty, or twenty-one when you get out you'll be able to support yourself. You'll be able to take care of yourself. And we hope you will be able to behave in society and we hope that you will be able to make your mother proud of you. *639 Because I know you can do that. And it should mean a lot to you. Your mother has spent a lot of years struggling raising you and taking care of you. She should be proud of you.
This Court will order that J.G. be detained at St. James Youth Center and that the State take custody within the next thirty days. That J.G. be placed in secured environment of Louisiana Training Institute until his Twenty-first birthday. While there, he will be provided with training pursuant to G.E.D. program, guidance by professionals in the development of social awareness and socially accepted behavior patterns and coping mechanisms. Mrs. G. will have the appropriate visitation there.

EXCESSIVE SENTENCE
From the record before us we find that the trial court carefully considered all the relevant evidence and the guidelines of Ch.C. art. 901 and concluded that confinement at LTI was the least restrictive disposition consistence with the circumstances of the case, the needs of the juvenile and the best interest of society. On review, we find no abuse of the trial court's discretion in reaching what appears to us to be a wise and logical conclusion.
We find, therefore, that this assignment of error is without merit.

ERROR PATENT REVIEW
This Court, in State in Interest of B.J., 617 So.2d 238 (La.App. 5 Cir.1993), stated that an error patent review is appropriate in a juvenile delinquency proceeding. See Ch.C art. 104. Accordingly, we have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reflects the following patent errors.
First, the record fails to show that the juvenile was advised of his rights when he appeared to answer the allegations contained in the petitions filed against him as required by Ch.C art. 855.[2] However, in this case, we find this error to be harmless. The record here reflects that the juvenile was represented by counsel when he appeared in court and that he pled not guilty to the charges against him. Thus, it appears that the juvenile's rights were adequately protected and the fact that he was not so advised caused him no prejudice in connection with his rights.
In addition, it appears that there exists patent error with regard to the disposition of the juvenile.
J.G. was adjudicated a delinquent in connection with four offenses, one felony and three misdemeanors. However, the judge only imposed one general disposition, commitment to L.T.I. until J.G.'s twenty-first birthday, and did not specify a different disposition for each adjudication. In State v. Perkins, 609 So.2d 868, 871 (La.App. 5 Cir.1992), we noted that "The imposition of one sentence for two offenses, or the lack of imposition of sentence for one of the offenses, is patent error."
LSA-Ch.C. art. 898 governs the duration of disposition based on a felony-grade adjudication and provides, in part, as follows:
A. No judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication. The court shall give a child credit for time spent in secure detention prior to the imposition of disposition.
In this case, since there are different possible durations of disposition for each offense, we find that the trial judge should have given a specific disposition for each adjudication.
In addition, we note that the trial judge did not give J.G. credit for time served as authorized and required by these two articles. See also LSA-C.Cr.P. art. 880.
For the above reasons, the trial court's judgment adjudicating J.G. delinquent of two counts of aggravated assault, one count of *640 disturbing the peace and one count of simple burglary is affirmed.
However, the trial court's judgment committing J.G. to the Department of Public Safety and Corrections/Louisiana Training Institute until his 21st birthday is vacated and the case is remanded for further proceedings.
Accordingly, we vacate the disposition in this case and remand the case to the district court for further proceedings in conformity with this opinion.
ADJUDICATION AFFIRMED; DISPOSITION VACATED AND REMANDED.
NOTES
[1] Art. 901B reads:

B. The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.
[2] Ch.C. arts. 854-856 set forth the requirements for the juvenile's answer to a petition filed against him. A reading of these articles and the comments following reflect that the purpose of these articles are to ensure that the juvenile understands his rights prior to entering a plea of guilty.