liGOTHARD, Judge.
|2R.C., a juvenile, seeks review of the sentence imposed on him by the Juvenile Court after an adjudication of delinquency. His assertion is that the sentence is unconstitutionally excessive. We disagree.
On January 27, 1995, the Jefferson Parish District Attorney filed a petition in Juvenile Court seeking to have R.C. adjudicated delinquent based on the allegations that he committed aggravated assault in violation of LSA-R.S. 14:37, and simple battery in violation of LSA-R.S. 14:35. On January 31, 1995, the juvenile entered a denial to the charges contained in the petition. Subsequently, R.C. withdrew his former denial and entered an admission to the simple battery charge. In exchange for this admission, the state dismissed the aggravated assault allegation.
[aBefore sentencing the juvenile, the court conducted a hearing on July 13, 1995 at which the juvenile expressed his intention to return to school, continue working at his part *783 time job and maintain a lawful lifestyle. After considering testimony, the court continued the matter until October 12, 1995 in order to provide the juvenile with an opportunity to prove his intentions to the court. Accordingly, the court listened to additional testimony on October 12, 1995, and thereafter committed R.C. to the Department of Public Safety and Corrections/Louisiana Training Institute (LTI) for six months with credit given for time served in detention. On October 26, 1995, the juvenile, through the assistance of counsel, filed a motion for appeal and a motion for release on bond pending appeal. The judge granted the juvenile’s motion for appeal, but denied his request for release on bond. R.C. filed a writ application in this Court seeking review of the denial of his request for post-dispositional bail and also challenging his six month sentence as excessive. This Court, set aside the juvenile court’s denial of bail, remanded the case for a hearing to fix post-dispositional bail,[1] and granted the juvenile’s writ of review to consider the question of excessive sentence. We now consider that issue.
On January 8, 1995, R.C. and two of his friends went to Raymond Fleming’s house where a fight ensued between Brad Mitchell, one of the co-defendants, and Raymond Fleming, the victim. According to the victim’s sister, during the incident, R.C. lifted his shirt and displayed a gun that he had in his waistband.[2] In contrast, LR.C. claimed that he was standing by the car when the fight occurred, that he did not have a gun, and that he did not hit anyone with a gun.
As previously stated, the juvenile asserts that the trial court erred in imposing a sentence of incarceration for a period of six months, the statutory maximum. The juvenile contends that the sentence of six months is constitutionally excessive in view of the juvenile’s lack of a prior record, his family and school background, the nature of the offense and his minimal, non-violent participation in the offense.
At the July 13, 1995 disposition hearing, Elizabeth Tucker, the probation officer assigned to conduct the pre-disposition investigation, recommended that R.C. be committed to LTI. Ms. Tucker’s recommendation was based on the seriousness of the crime, the juvenile’s gang involvement, and the fact that he was neither working nor attending school at the time of the investigation. Although the Department’s recommendation was commitment to LTI, Ms. Tucker acknowledged that probation was a viable option in light of the fact that this was R.C.’s first offense and that R.C. had recently taken some positive steps by obtaining employment at a local bowling alley and by planning to enroll in school in the fall.
At this dispositional hearing, R.C.’s mother testified that she had contacted a counselor at Marrero Middle School about a week prior to the hearing and was told R.C. could be placed on a program at the school. She also testified that she was bringing R.C. to work, sometimes six days a week.
R.C. then testified that he was not involved in any type of gang activity, and that he was employed. He also testified that he intended to continue working and would be willing to fulfill the conditions of probation, should the court so place him. After considering this testimony, the judge continued the hearing until October 12, |s1995, to give R.C. the opportunity to prove himself and follow through with his alleged intentions.
At the October 12, 1995 dispositional hearing, Ms. Tucker again recommended that R.C. be committed to the Department of Public Safety and Corrections and assigned to LTI. Ms. Tucker testified that R.C. was not attending school and that he discontinued working about one month after the last court date. On cross-examination it was brought *784 out that the principal of Worley School made a deal with the mother whereby R.C. could stay out of school even though he was only fifteen as long, as he remained employed. The principal was led to believe that the child was working, while R.C.’s employer was led to believe that the child was in compliance with the condition of his employment that he remained in school.
R.C. then testified that he did not attend school because he was told by the principal not to come because he was “too bad”. R.C. further testified that although he had a job, he was not currently working because business was slow. R.C. thereafter advised the court that if he was placed on probation, he would comply with the terms of the probation contract.
After considering the testimony presented as well as the argument of counsel, the judge imposed the following disposition:
... at this time, I think that you have to understand that there is authority. That somebody says something and they mean it, and they follow through with it. Now, I gave you four months to try to get your life together, to do what needed to be done, in order not to go to LTI and you didn’t do it. So now I have to do what you knew was going to happened, and that is send you to LTI for six months. I’m going to recommend you for the Lite program or the STOP program at Bridge City. If you work those programs, in ninety days you come home and you have very strict supervision at home. So, if you go there and you work hard, you’ll be out in ninety days. If you go there and you do nothing like you’ve been doing, you’re going to stay the whole six months. Okay, alright.
RR.C. now complains that the six month sentence is constitutionally excessive considering that this was his first offense and also considering that his participation in the offense was minimal and non-violent.
Art. I, Sec. 20 of the Louisiana Constitution of 1974 prohibits “cruel, excessive, or unusual punishment.” Where exees-sive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child’s needs, and the best interest of society. LSA-Ch.C. art. 901 B;[3] State in Interest of J.G., 94-194 (La.App. 5 Cir. 7/26/94), 641 So.2d 638. Much discretion is granted to the court in juvenile matters because of the special nature of the proceedings, but the court must balance the needs of the child with the best interest of society. State in Interest of Ray, 432 So.2d 312 (La.App. 5 Cir.1983); State v. R.B., Jr., 595 So.2d 702 (La.App. 5 Cir.1992).
In determining an appropriate disposition, the court is guided by LSA-Ch.C. art. 901. Paragraphs C and D of that article provide the following guidelines:
C. Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:
(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
(3) A lesser disposition will deprecate the . seriousness of the child’s delinquent act.
(4) The delinquent act involved the illegal carrying, use, or possession of a firearm.
17D* The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:
(1) The child’s delinquent conduct neither caused nor threatened serious harm.
(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.
(3) The child acted under strong provocation.
(4) There were substantial grounds tending to excuse or justify the child’s delin *785 quent conduct, though failing to establish a defense.
(5) The victim of the child’s delinquent conduct induced or facilitated its commission.
(6) The child or his family has compensated or will compensate the victim of his delinquent conduct for the damage or injury that the victim sustained.
(7) The child has no history of prior delinquency or has led a lawabiding life for a substantial period of time before the commission of the instant delinquent act.
(8) The child’s delinquent conduct was the result of circumstances unlikely to recur.
(9) The character and attitudes of the child indicated that he is unlikely to commit another delinquent act or crime.
(10) The child is particularly likely to respond affirmatively to probationary treatment.
(11) The commitment of the child would entail excessive hardship to himself or his family.
L.S.A.-Ch.C. art. 903 A provides:
A. Before entering a judgment of disposition, the court shall orally inform the child and shall state for the record the considerations taken into account and the factual basis therefor in imposing the particular disposition chosen.
Given the circumstances in the present case, we do not find the six month sentence imposed on the juvenile to be excessive. From the record, it is clear that the trial judge felt that the disposition imposed was the least restrictive disposition | gconsistent with the circumstances of the ease, the needs of the child, and the best interest of society. Moreover, the judge, prior to imposing a disposition of commitment to LTI, gave the juvenile time to prove himself and to follow through with his intentions of going to school and maintaining employment. It was only when the juvenile did not follow through with his stated intentions that the trial judge decided to commit him to LTI. We also note that, although the judge committed the juvenile for a term of six months, she specified that if he worked hard at LTI, he could be released in ninety days.
Based on the foregoing discussion, and considering a judge’s wide discretion in juvenile matters, we find no merit in the juvenile’s contention that the trial court abused its discretion in the dispositional phase. Consequently, we affirm the juvenile’s adjudication and disposition.
AFFIRMED.

. Pursuant to this Court's order, on November 30, 1995, there was a bond hearing in Juvenile Court, at which time the judge reinstated the $10,000 commercial surety bond previously posted. The court also added the condition that the minor be placed on EMP (Electronic Monitoring Program) by the Department of Juvenile Services Probation Department.

. At the pre-dispositional hearing, Ms. Tucker testified that the victim's sister said that R.C. hit Raymond Fleming on the head with a gun; however, she later testified that the victim's sister never said that she saw R.C. hit anybody with a gun, but rather that R.C. lifted his shirt and displayed a gun.

. Article 901B provides that "[t]he court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.”