# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 09-1272

**STATE OF LOUISIANA**

**IN THE INTEREST OF**

**S.C.J.**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, NO. 22545**
**HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES T. GENOVESE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and James T. Genovese, Judges.

**ADJUDICATIONS AFFIRMED; DISPOSITION VACATED; CASE REMANDED WITH INSTRUCTIONS.**

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**COUNSEL FOR THE JUVENILE/APPELLANT:**
        **S.C.J.**

**John F. DeRosier**
**District Attorney – Fourteenth Judicial District**
**Carla S. Sigler, Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**GENOVESE, Judge.**

On July 22, 2009, the State filed a petition charging the juvenile, S.C.J.,[1] with armed robbery with the use of a firearm and attempted second degree murder. An adjudication hearing was held on August 31, 2009, and the trial court found that the juvenile committed attempted armed robbery and attempted second degree murder.

A disposition hearing was held on September 18, 2009, and the trial court ordered that the juvenile be placed with the "Department" for a period not to exceed two years in a non-secure or secure facility. Additionally, the trial court ordered a psychological evaluation and ordered that the juvenile be brought before the court on January 11, 2010, for reevaluation. S.C.J. appeals the adjudications and disposition.

For the following reasons, we affirm the trial court's adjudications, vacate the disposition, and remand for the imposition of new and separate dispositions.

## FACTS

On June 22, 2009, the victim, twenty-one-year-old Demetrius Mitchell (Demetrius), stole a compact disc (CD) player from S.C.J.'s car. Later that night, while at his home, Demetrius received a call from S.C.J. who told him that he had a bullet with his name on it and that he needed to pay him $200.00. Demetrius gave the CD player to his grandmother, and she returned it.

The next day, Samekia Ceasar (Samekia) called Demetrius to come to her house to look at some puppies. While looking at the puppies in Samekia's backyard, Demetrius saw S.C.J. and S.C.J.'s brother, Josh, coming toward him. S.C.J. cocked the gun he was holding and said, "Where [sic] my money at?" or "You got my money?" S.C.J.'s brother punched Demetrius, and Demetrius grabbed him. S.C.J.

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, initials are being used to protect and maintain the privacy of the minor involved in these proceedings.

hit Demetrius on the head with a metal object, and Demetrius heard "Pow." A single bullet struck Demetrius' arm and back. S.C.J. and his brother fled. Demetrius testified that the brothers patted down his pockets and asked "where is my money," but they did not take anything because he did not have anything.

## ASSIGNMENTS OF ERROR

S.C.J. assigns the following errors:

1) The evidence introduced at the adjudication hearing of this case when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove all of the elements of the offense of attempted second degree murder beyond a reasonable doubt.

2) The evidence introduced at the adjudication hearing of this case when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove all of the elements of the offense of attempted armed robbery beyond a reasonable doubt.

3) Alternatively, prosecution of both attempted second degree murder and the underlying offense of armed robbery violated the Double Jeopardy Clause.

4) The record does not contain a written judgment of disposition as is required by the Children's Code.

***Assignments of Error Numbers 1 and 2****:*

S.C.J. asserts that the evidence presented by the State was insufficient to support the adjudications.

In *State ex rel. J.M.,* 99-136, pp. 2-3, (La.App. 3 Cir. 6/2/99), 742 So.2d 6, 7, this court held in pertinent part:

> In a case involving a juvenile, the State has the burden of proving, beyond a reasonable doubt, the commission of the alleged delinquent act. La.Ch.Code art. 883. This burden of proof is no less strenuous than that required in the criminal proceeding against an adult. *State In Interest of Tatom*, 463 So.2d 35 (La.App. 5 Cir.1985). On review, the standard for due process, fashioned by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

2

(1979), is applicable to determine whether the evidence was sufficient to support an adjudication of delinquency in a Juvenile matter. *State In Interest of T.L.*, 514 So.2d 217 (La.App. 5 Cir.1987). Essentially, while we review whether the evidence in support of the adjudication of a Juvenile is sufficient[,] we must determine, viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could find from the evidence adduced, proof of guilt beyond a reasonable doubt. *State In Interest of Wilkerson*, 542 So.2d 577 (La.App. 1 Cir.1989). Furthermore, it is well settled that appellate review in juvenile delinquency proceedings extends to both law and facts. La. Const. Art. V, § 10(B) (1974); *State In Interest of Batiste*, 367 So.2d 784 (La.1979). In *Wilkerson*, 542 So.2d 577, 581 [citations omitted], the court stated:

> In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review.

Louisiana Revised Statutes 15:438 provides "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

Attempted Armed Robbery

In *State v. Stone*, 615 So.2d 38, 40 (La.App. 3 Cir.), *writ denied*, 623 So.2d 1302 (La.1993) (emphasis added), this court explained in pertinent part:

> To prove an attempted armed robbery, the State had to prove that the defendant 1) had a specific intent to commit the crime of armed robbery, and 2) did an act for the purpose of and tending directly toward the commission of the crime of armed robbery. *State v. Clay*, 576 So.2d 1099 (La.App. 3d Cir.), *writ denied*, 580 So.2d 669 (La.1991).

> Article 14:64 requires: 1) a taking, 2) of anything of value, 3) belonging to another, 4) from the person of another or from his immediate control, 5) by use of force or intimidation, 6) while armed with a dangerous weapon.

> Intent is a state of mind which need not be proven as a fact, but may be inferred from the facts and circumstances of the transaction and the actions of the defendant. *State v. Boyer*, 406 So.2d 143 (La.1981).

3

Specific intent is an ultimate legal conclusion to be resolved by the trier of fact. *State v. Graham*, 420 So.2d 1126 (La.1982).

The above evidence does not prove, beyond a reasonable doubt, that defendant possessed the intent to take anything from the store. *To convict of attempted armed robbery, there must be sufficient evidence to establish the intent to take something of value even though the act of taking need not be established.*

S.C.J. argues that the evidence shows that he attempted to reclaim the money owed to him by the victim and that he did not attempt to rob the victim. In S.C.J.'s brief to this court, counsel points out that "S.C.J. also informed the detective that in addition to the CD player, $200.00 and some CD's were also taken." Additionally, S.C.J. asserts that there was no taking and that the State failed to prove that he had the specific intent to take the victim's property.

The victim testified that the night before, when S.C.J. called, he said to pay him $200.00. According to the victim, when S.C.J. came into Samekia's backyard holding the gun, he said to the victim, "Where [sic] my money at?" When the State asked the victim if he owed S.C.J. any money, the victim responded, "No, ma'am." The victim explained that S.C.J. and his brother patted down his pockets and asked where their money was, but he did not have anything for them to take. Additionally, the victim clarified that although the medical records from the hospital where he was taken after the shooting reflected that he stated, "They robbed me," the correct statement was that they tried to rob him.

Samekia testified that when S.C.J. entered the backyard with the gun in his hand, he asked the victim, "What is up now?" She recalled that when Josh came into the backyard, he asked the victim, "What you got in your pocket?"

Detective Brent Young of the Calcasieu Parish Sheriff's Office testified that the victim told him that Josh patted him down while S.C.J. held the gun.

4

Additionally, Detective Young stated in pertinent part:

Q. Officer, what day did you speak with Demetrius, the victim?

A. It was after the incidence [sic], a couple of days.

Q. Okay. Now, you said that Demetrius admitted to you that he burglarized [S.C.J.]'s car, correct?

A. Yes.

Q. Okay. And Demetrius also admitted to you that he knew [S.C.J.] did not intend to shoot him; is that correct?

A. He stated that, yes.

Q. Now, you had a conversation with [S.C.J.] at the police station; is that correct?

A. Yes.

Q. Okay. And he told you that $200 was also missing; is that correct?

A. Yes. But we had nothing to substantiate that.

Q. Okay. And you also asked [S.C.J.] if Josh patted down Demetrius; is that correct?

A. Correct.

Q. And he denied that; is that correct?

A. Correct.

Q. So his story also is different from Samekia's in that regard, correct?

A. Correct.

Q. Okay. Now, during your conversation with [S.C.J.], you and him spoke about Josh, also; is that correct?

A. Correct.

Q. Joshua Ardie. Okay. And [S.C.J.] told you that Josh did ask Demetrius if [he] had the money to just give it back; is that correct?

A. Correct.

5

Q. So in other words, he was saying he didn't pat him down; he just told him to give the money back that he had stolen; is that correct?

. . . .

Q. Samekia Ceasar told you that Josh patted Demetrius down?

A. Correct.

Q. Correct. But [S.C.J.] is saying that Josh did not pat him down; is that correct?

A. Correct.

Q. Okay. And during your conversation with [S.C.J.], he said that Josh did say, "If you have the money, return it"?

A. Correct.

Q. Okay. Neither [S.C.J.] nor Josh took money from Demetrius; is that correct?

A. Demetrius stated that while it was missing, that it's unknown if it was taken during the incident or it was just merely misplaced prior to the incident.

Q. Okay. And they didn't take anything else from Demetrius; is that correct?

A. It doesn't appear, no.

Q. Okay. So nothing of value was taken from the victim; is that correct?

A. It doesn't appear.

THE COURT: What she just asked you about what he told you about the money being taken, what did you say?

MR. YOUNG: At the time when he was interviewed at the hospital, he indicated his wallet was taken. However, later on in the investigation, we had nothing to substantiate whether a wallet was taken during the incident or not. At the time the warrants were issued, we only had the story of the victim saying that he was patted down, [and] that his wallet was missing after the shooting incident.

THE COURT: Okay. What would you be looking for to substantiate that?

6

MR. YOUNG: Well, he later changed his statement, indicating that he didn't know if the wallet was taken[,] or he merely misplaced the wallet prior to the incident.

When questioned by the State as to the reason S.C.J. and his brother patted down the victim, Detective Young responded, "It appears they were demanding payment for items stolen, yes."

In *State v. Rubin,* 04-1531 (La.App. 3 Cir. 4/6/05), 899 So.2d 180, *writ denied*, 05-1218 (La. 12/16/05), 917 So.2d 1106, this court explained that in proving the element of armed robbery of the thing belonging to another, it is not essential that the thing of value be owned by the victim, but that the defendant is not the owner of the thing and that the victim had a greater right to possession of the thing of value at the time of the taking than did the defendant.

A review of the record does not indicate that the thing of value attempted to be taken by S.C.J. from the victim belonged to S.C.J. Although Detective Young testified that S.C.J. claimed that the victim took $200.00 from him, he testified that there was nothing to substantiate that claim. No other testimony was presented to show that the victim took $200.00 from the juvenile. In fact, the victim testified that he returned the stolen CD player to the juvenile and that he did not owe S.C.J. any money. Consequently, S.C.J.'s argument that he was merely reclaiming money he was owed is not supported by the evidence.

However, the record before this court indicates that S.C.J., while armed with a gun, demanded money from the victim and that he and his brother patted down the pockets of the victim in search of something of value. Accordingly, after reviewing the evidence pursuant to the *Jackson* standard, we find that the State presented sufficient evidence that S.C.J. had the specific intent to take something of value from

7

the victim while armed with a gun even though the act of taking was not established.

Accordingly, this assignment of error lacks merit.

Attempted Second Degree Murder

Louisiana Revised Statutes 14:27(A) defines attempt as:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Louisiana Revised Statutes 14:30.1(A) defines second degree murder as:

[T]he killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm;  or

(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm.

First, S.C.J. argues that the State limited the attempted murder charge to the felony-murder doctrine and points out that the State included in the petition only the language that the victim was shot "during the perpetration of an armed robbery." However, we find that the State did not limit the charge to La.R.S.14:30.1(A)(2), the subsection establishing the felony-murder doctrine, but merely recited the facts in this case. *See State v. Landfair*, 07-751 (La.App. 5 Cir. 3/11/08), 979 So.2d 619, *writ denied*, 08-1143 (La. 1/9/09), 998 So.2d 713.

8

In the instant matter, the trial court in its reasons for adjudication stated in pertinent part:

> All right. After hearing all the evidence, the court does find that the State met their [sic] burden of proof with regards to the attempted arm [sic] robbery, not armed robbery, but attempted armed robbery.
>
> There was discussion of the money before. There was discussion about both the victim and the witness about money that day, and he had a weapon with him. And I find that they did prove that beyond a reasonable doubt.
>
> And the court also[,] pursuant to [La.R.S. 14:30.1(A)(2),] finds that they [sic] met their burden of proof with regards to attempted second-degree murder with an intent to kill or inflict great bodily harm does not have to be present if they were engaged in the perpetration or attempt of the armed robbery, which the court found they [sic] met the burden of proof.

After reviewing the reasons set forth by the trial court, we find that it did not exclude a finding of specific intent, that it had previously found that sufficient evidence was presented to support the attempted armed robbery, and that it had no need to determine if there was sufficient evidence to support specific intent.

Moreover, the State argued specific intent in closing arguments, stating in pertinent part:

> Clearly, he had the specific intent. The [statute] provides just by his actions, going there with a loaded gun. And he had already said he had a bullet with his name on it. The threats had already been made. He followed through on his threats. We [have] borne our burden of proof, Your Honor.

Consequently, although the trial court limited its finding to attempted second degree murder based upon the armed robbery, this court is not limited in its review of the sufficiency of the evidence to that specific theory.

S.C.J. argues that, while the record should not be examined for specific intent to kill because the State limited its charge and the trial court limited its ruling to the

9

felony-murder doctrine, there is insufficient evidence to support a finding of specific intent. S.C.J. argues that if he had intended to shoot the victim, he would not have hit him in the head with the gun.

In *State v. Corley*, 97-235, p. 6 (La.App. 3 Cir. 10/8/97), 703 So.2d 653, 659, *writ denied*, 97-2845 (La. 3/13/98), 712 So.2d 875, this court explained in pertinent part:

> "Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *State v. Carroll*, 95-859, p. 4 (La.App. 3 Cir. 1/31/96), 670 So.2d 286, 288. "Specific criminal intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances present in the case and from the action of the defendant." *Id*. at 289.

In this case, the victim testified that S.C.J. called him the night before the shooting and threatened him by stating that he had a bullet with his name on it. The victim and Samekia testified that on the morning of the shooting, while in the backyard, S.C.J. entered the backyard with a gun in his hand and that he cocked the gun. According to Samekia, S.C.J. walked toward them with the gun cocked to the side, and she feared that he would shoot them. Samekia testified that "[H]e [S.C.J.] hit him one time with the gun and came up with it, and when he was going back down to hit him again with the gun, the gun went off." Referring to S.C.J. hitting the victim with the gun, the State asked Samekia, "Was he holding it like to discharge it where his finger would touch the trigger?" She responded, "Yes, ma'am."

On cross examination, S.C.J.'s attorney asked the victim, "[Y]ou told him [Detective Young] that you knew [S.C.J.] didn't intend to shoot you, correct?" And the victim responded, "Well, I said he looked shocked after he shot me."

Sergeant Roy Jones of the Calcasieu Parish Sheriff's Office testified that S.C.J.

10

admitted bringing the gun to Samekia's house, but stated that he removed the clip prior to meeting up with the victim.

Officer Christopher Cormier, who testified that he is a "deputy sheriff crime scene I.D. officer with the Calcasieu Parish Sheriff's Office," also testified that, based upon a shell casing that was found, he believed that the weapon, which was not recovered, was a .380.

Deputy Lee Greanery, a crime scene technician with the Calcasieu Parish Sheriff's Office, testified that he observed and photographed the shirt the victim was wearing at the time of the shooting. He explained that around the bullet hole in the shirt, there appeared to be powder burns associated with a close range shooting. When asked by the State, "Would this be consistent . . . with someone who was hit in the head and accidently shot?" he responded, "[f]rom my experience[,] I would say no. But I can't be 100 percent positive . . . ."

The evidence in the record reveals that S.C.J. threatened to shoot the victim the night before and that he sought out the victim while carrying a gun. When he found the victim, he cocked the gun. And, when he hit the victim in the head, his finger was on the trigger. Additionally, in Officer Greanery's opinion, it was not an accidental discharge.[2] Thus, we find that the State presented sufficient evidence to the trial court for it to find that S.C.J. had specific intent to kill or inflict great bodily harm upon the victim. Having found that S.C.J. had the specific intent to kill the victim, we need not address S.C.J.'s argument in brief that attempted second degree felony murder is a non-crime.

---

[2]Officer Greanery testified that he had been a crime scene investigator for seven years, that he had been with the sheriff's office for fifteen years, and that he had seen his "share" of shootings. There was no discussion of whether Officer Greanery qualified as an expert in this field, but S.C.J. did not challenge or rebut his testimony.

Accordingly, this assignment of error is without merit.

***Assignment of Error Number 3****:*

S.C.J. argues that prosecution of both attempted second degree murder and the underlying offense of armed robbery violated the double jeopardy clause of both the federal and state constitutions.

In *State v. Sandifer,* 95-2226, p. 5 (La. 9/5/96), 679 So.2d 1324, 1329, the court explained: "[T]he Double Jeopardy Clause, under both the 'additional fact' and the 'same evidence' tests, prevents an offender from being convicted of both a felony murder and the underlying felony. *State ex rel. Adams v. Butler*, 558 So.2d 552, 553 (La.1990)."

The remedy for a double jeopardy violation involving a felony-murder conviction is that the less severely punishable conviction and sentence are vacated and set aside. *State ex rel. Boyd v. State*, 98-378 (La. 10/9/98), 720 So.2d 667, and *State v. Cox*, 07-774 (La.App. 3 Cir. 3/4/09), 4 So.3d 998, *writ denied*, 08-602 (La. 9/4/09), 17 So.3d 948.

However, because we find that sufficient evidence was presented to support the attempted second degree murder conviction based upon the specific intent to kill, and not simply based upon the felony murder doctrine, there is no double jeopardy violation.

Accordingly, this assignment of error is without merit.

***Assignment of Error Number 4****:*

In assignment of error number four, S.C.J. contends that the trial court erred by not setting forth a written disposition in the record. We agree.

12

Louisiana Children's Code Article 903 provides in pertinent part:

B. The court shall enter into the record a written judgment of disposition specifying all of the following:

(1) The offense for which the child has been adjudicated a delinquent.

(2) The nature of the disposition.

(3) The agency, institution, or person to whom the child is assigned.

(4) The conditions of probation, if applicable.

(5) Any other applicable terms and conditions regarding the disposition.

(6) The maximum duration of the disposition and, if committed to the custody of the Department of Public Safety and Corrections, the maximum term of the commitment.

. . . .

D. An extract of the minutes of court specifying the information required by Paragraph B of this Article and signed by the court shall be considered a written judgment of disposition.

Counsel for S.C.J. and the State concede that a Judgment of Commitment and Order Granting Custody setting forth the disposition was prepared but not included in the record. Counsel for S.C.J. attaches a copy of same to her brief. Information from the clerk of court's office reflects that the original Judgment of Commitment signed by the trial judge has not been received; thus, the document has not been filed in the record.

We now turn our attention to an error patent review. Although the Louisiana Children's Code is silent as to whether a juvenile proceeding warrants an error patent

review, this court has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081.

In our error patent review, we note that the sentence imposed by the trial court is indeterminate. The trial court erred by failing to impose a disposition on each adjudication. *See State in the Interest of J.G.*, 94-194 (La.App. 5 Cir. 7/26/94), 641 So.2d 633.

S.C.J. was charged with armed robbery with use of a firearm and attempted second degree murder, and he was adjudicated by the trial court on these counts. The transcript of the disposition by the trial court provides in pertinent part:

> I am accepting the recommendation to place him with the Department for - - not to exceed two years. The only thing I'm going to do differently is place him in the Department for evaluation determining the most appropriate placement. . . .
>
> So, I'm not saying secure now[,] and I'm not saying nonsecure.

The trial court also ordered reevaluation of the disposition on January 11, 2010. Hence, there is but one disposition for two adjudications.

Accordingly, we vacate the disposition and remand the matter to the trial court for imposition of a separate disposition for each adjudication. Additionally, we order the trial court to enter into the record a written judgment of the dispositions in accordance with La.Ch.Code art. 903.

**DECREE**

The Juvenile's adjudications for attempted armed robbery with use of a firearm and attempted second degree murder are affirmed. The disposition for these adjudications is vacated, and the matter is remanded to the trial court for imposition

of new and separate dispositions for each adjudication with the trial court entering into the record written judgment of these dispositions.

**ADJUDICATIONS AFFIRMED; DISPOSITION VACATED; CASE REMANDED WITH INSTRUCTIONS.**